CJ-2021-1871
Stallings



## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

(1) SPRINGDALE OK SPE LLC;
(2) SUMMER OAKS REALTY SPE LLC;
and
(3) BRYAN HILL SPE LLC

    **Plaintiffs,**

**v.**

(1) WEHNER MULTIFAMILY LLC;
(2) WEHNER CONSTRUCTION
MANAGEMENT, LLC; and
(3) RYAN WEHNER,

    **Defendants.**

Case No. **CJ-2021-1871**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 2 8 2021

RICK WARREN
COURT CLERK
109

### PETITION

Plaintiffs, Springdale OK SPE LLC ("Springdale"), Summer Oaks Realty SPE LLC

("Summer Oaks"), and Bryan Hill SPE LLC ("Bryan Hill") (collectively, the "Plaintiffs"), for their

causes of action against Defendants, Wehner Multifamily LLC ("WMF"), Wehner Construction

Management, LLC ("Wehner Construction"), and Ryan Wehner ("Wehner"), alleges and states as

follows:

### INTRODUCTION

1.    Plaintiffs, as owner of apartment complexes near Oklahoma City, State of

Oklahoma, seek to recover from WMF, as Plaintiffs' management agent, and from Wehner,

WMF's principal, for breach of contract, breach of fiduciary duties, conversion, fraud, and related

causes of action.

## PARTIES, JURISDICTION, AND VENUE

2.      Springdale is a limited liability company existing under the laws of the State of Oklahoma.

3.      Summer Oaks is a limited liability company existing under the laws of the State of Oklahoma.

4.      Bryan Hill is a limited liability company existing under the laws of the State of Oklahoma.

5.      WMF is a limited liability company existing under the laws of the State of Texas, with a principal place of business at 7075 Twin Hills Avenue, Suite 600, Dallas, Texas 75231. WMF may be served with process through its registered agent, Robert L. Eden at 8131 LBJ Freeway, Suite 700, Dallas, Texas 75251 or wherever he may be found.

6.      Wehner Construction is a limited liability company existing under the laws of the State of Texas, with a principal place of business at 7075 Twin Hills Avenue, Suite 600, Dallas, TX 75231. Wehner Construction may be served with process by serving its registered agent, Ryan Wehner at 7075 Twin Hills Avenue, Suite 600, Dallas, Texas 75231 or wherever he may be found.

7.      Wehner is a natural person and a citizen of the State of Texas. Upon information and belief, Wehner may be served with process by personal service at his residence at 3744 West Bay Circle, Dallas, Texas 75214 or wherever he may be found.

8.      Upon information and belief, at all times relevant to this action, Wehner was the principal of WMF. The basis for this belief is that Wehner executed contracts on behalf of WMF.

9.      Upon information and belief, at all times relevant to this action, Wehner was the President of WMF, Wehner Construction, and Building Supply Imports ("BSI").

2

10.     This Court has jurisdiction over the subject matter of this lawsuit and the parties named herein.

11.     Venue is proper in the District Court of Oklahoma County, State of Oklahoma.

## FACTUAL ALLEGATIONS

### *Background*

12.     Plaintiffs are single asset entities that are the owners of apartment complexes in or near Oklahoma City, State of Oklahoma.

13.     Springdale owns the Springdale Village Apartments at 4300 S. Barnes Avenue, Oklahoma City, Oklahoma (the "Springdale Apartments").

14.     Summer Oaks owns the Summer Oaks Apartments at 5744 N.W. 16th Street, Oklahoma City, Oklahoma (the "Summer Oaks Apartments").

15.     Bryan Hill owns the Bryan Hill Apartments at 7208 N.W. 36th Street, Bethany, Oklahoma (the "Bryan Hill Apartments") (the Springdale Apartments, Summer Oaks Apartments, and Bryan Hill Apartments are collectively referred to as the "Properties").

16.     Plaintiffs entered into management agreements with WMF for each of their respective Properties on or about June 1, 2017 (collectively, the "Contracts").

17.     WMF drafted the Contracts, which gave WMF authority to manage the Properties for the benefit of Plaintiffs.

18.     Plaintiffs entered into the Contracts with WMF on the specific promise of Wehner that WMF would increase the occupancy of the Properties from 71% to 81%.

19.     Plaintiffs terminated the Contracts on January 30, 2019, and WMF ceased managing the Properties on February 15, 2019.

3

20.     By the time WMF ceased managing the Properties, occupancy had fallen dramatically.

21.     Occupancy of the Properties did not return to pre-WMF levels until approximately the spring of 2021.

22.     During this period, Plaintiffs lost millions of dollars in profits when compared to the modest occupancy achieved prior WMF.

23.     The decreased occupancy and lost profits are the result of the following breaches of contract, breaches of fiduciary duty, fraud, and related causes of action.

### *The Contracts*

24.     Under the terms of the Contracts, WMF was authorized to incur expenses on behalf of Plaintiffs, to rent and lease units at the Properties on terms and conditions approved by Plaintiffs, to repair the Properties, to collect rent, to collect security deposits, to staff the Properties with on-site employees, to enter into service contracts, to make disbursements for the Properties, and to obtain reimbursement from Plaintiffs.

25.     WMF was also required to maintain the books and records of the Properties in accordance with accepted accounting practices.

26.     In consideration for WMF's property management services, the Contracts provided for an initial set up fee of $1,500.00, a Management Fee in the amount of three and one-half percent (3.5%) of gross receipts, and fifteen percent (15%) of the final contract amount of some construction activities.

27.     In violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF engaged in the following conduct that has damaged Plaintiffs. Upon information and belief, this

conduct was undertaken with the knowledge of Wehner and for the purposes of benefiting Wehner through WMF and through other entities controlled by Wehner, including BSI.

### *WMF Violates the Contract*

### WMF Entered Into Leases Including Terms And Conditions Not Approved By Plaintiffs

28.     Without authorization from Plaintiffs, WMF failed to collect security deposits from tenants granted occupancy at the Properties by WMF.

29.     As a result, Plaintiffs incurred significant expenses to repair units vacated by tenants who were not required to furnish security deposits by WMF.

30.     To date, tenants continue to occupy apartments at the Properties without the benefit of a security deposit, due to WMF's failure.

31.     Without authorization from Plaintiffs, WMF assumed responsibility for utility charges incurred by tenants. As a result, Plaintiffs have paid thousands of dollars for utilities that should have been paid by tenants.

32.     WMF rented units to tenants who did not meet the standards approved by Plaintiffs, including tenants who were not creditworthy, who lacked the ability to pay rent, who failed to pay the first and last month's rent, and who failed to pay the security deposit before WMF granted occupancy. As a result, WMF has been forced to spend thousands of dollars evicting tenants.

33.     WMF benefitted from these practices in at least two ways. First, tenant turnover allowed WMF to capture funds purportedly used for turnover renovations (*e.g.*, painting, new floors, and refinishing) because they were performed or supplied by affiliates of WMF.

34.     Second, the practices WMF engaged in effectively constituted offering sub-market. This conduct artificially inflated the occupancy of the Properties, thereby inducing Plaintiffs to continue to employ WMF as manager.

35.   WMF failed to raise rental rates at the Properties in accordance with the market, resulting in tenants paying below market rates and a loss of income to Plaintiffs.

36.   Upon information and belief, WMF and Wehner never intended to comply with their renting and leasing obligations under the Contracts when signed.

## WMF, Its Agents, And Employees Misappropriated Plaintiffs' Assets For Their Own Purposes

37.   Upon information and belief, WMF allowed tenants to occupy units and then failed to collect rent for those units.

38.   Upon information and belief, WMF allowed tenants to occupy units but failed to record such occupancy, then collected rent for such units and failed to direct such rents to Plaintiffs.

39.   The basis for the foregoing belief is Plaintiffs discovery of certain units occupied by tenants even though WMF's records, including rent receipts, reflected vacancy for such units.

40.   WMF granted rent-free and/or reduced rent tenancies to its employees without Plaintiffs' approval in violation of the Contracts and in violation of WMF's fiduciary duties to Plaintiffs. This practice even extended to WMF employees who worked at properties not owned by Plaintiffs.

41.   As a result of the foregoing conduct, Plaintiffs lost the opportunity to collect thousands of dollars in rent for these units.

42.   Upon information and belief, Wehner and other members of WMF's management knew of all the foregoing conduct, failed to prevent it, and failed to advise Plaintiffs of such conduct, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs.

43.   Upon information and belief, WMF failed to implement controls to prevent the foregoing conduct in violation of the Contracts.

6

44.     Upon information and belief, WMF and Wehner never intended to comply with their book and recording keeping obligations under the Contracts when signed.

### WMF Billed Plaintiffs For Renovations Of The Properties That Never Occurred

45.     Upon information and belief, WMF billed Plaintiff for renovations of the Properties that never occurred.

46.     As a result of this conduct, Plaintiffs paid WMF thousands of dollars for materials that were never installed and work that was never performed.

### WMF's Negligent Hiring

47.     WMF hired and employed managers at the Properties who WMF knew possessed poor performance records, even going so far as to hire employees at Properties previously fired from other properties managed by WMF.

### WMF Failed To Maintain The Properties

48.     WMF let units at the Properties fall into disrepair, resulting in violations during Section 8 inspections.

49.     Rather than remediate the condition of the units, WMF let the units fall into Section 8 abatement and failed to notify Plaintiffs that units had fallen into abatement.

50.     As a result of WMF's failure, Plaintiff lost thousands of dollars in rent to Section 8 abatement.

### WMF And Wehner Construction Failed To Repair Summer Oaks Apartments' Units Damaged By Fire

51.     In 2018, a fire damaged eight (8) units at Summer Oaks Apartments.

52.     Summer Oaks paid over one hundred thousand dollars to WMF and Wehner Construction to resolve the damage pursuant to an agreed scope of work.

7

53.     WMF and Wehner Construction did not perform the work in a timely or workmanlike manner.

54.     WMF and Wehner Construction misrepresented the progress of construction to representatives of Summer Oaks. Specifically, WMF and Wehner Construction told Summer Oaks that four (4) units were complete, while four (4) units were 95% complete. In fact, at the time of the representation, WMF and Wehner Construction had completed no more than demolition in the four "incomplete" units and painting in the "complete" units.

55.     Upon information and belief, for the four (4) units that were "completed" according to WMF and Wehner Construction, the work was not performed according to code. Specifically, WMF and Wehner Construction failed to install a sprinkler system in the units.

56.     WMF and Wehner Construction have retained far more than the fair value of the work performed.

57.     Including the initial payment to WMF and Wehner Construction, Summer Oaks paid over one hundred thousand dollars for the work described in the original estimate.

### WMF Failed To Oversee Construction

58.     As a result of WMF's poor oversight of a roofing project, debris was left on the roof of multiple buildings at Summer Oaks Apartments.

59.     Summer Oaks paid over one thousand dollars per building to remove the debris. Upon information and belief, WMF's failure affected six buildings at Summer Oaks Apartments.

### WMF Engaged In Unauthorized Transactions

60.     In violation of the Contracts, WMF engaged vendors for amounts in excess of $1,500.00 without Plaintiffs' approval.

61.    Under the Contracts, WMF was authorized to bid and administer construction contracts, subject to written approval from Plaintiffs.

62.    Upon information and belief, in violation of the Contracts, WMF engaged construction vendors without soliciting bids, without soliciting bids in good faith, and without obtaining written approval from Plaintiffs.

63.    Upon information and belief, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF engaged construction vendors affiliated with WMF, without disclosing the affiliation between the construction vendors, WMF, or Wehner.

64.    Upon information and belief, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF hired affiliated entities at above-market prices, including BSI and Wehner Construction.

65.    Upon information and belief, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF engaged construction vendors affiliated with WMF, including BSI and Wehner Construction, to perform unnecessary work at the Properties.

66.    Upon information and belief, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF accepted substandard work and materials from its affiliated construction vendors.

67.    Upon information and belief, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF engaged its affiliates, including BSI and Wehner Construction, on terms that exceeded generally prevailing terms.

68.    Upon information and belief, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, WMF directed expenditures towards elements at the Properties that would

9

drive revenue to WMF's affiliates, rather than administering expenditures in the best interest of Plaintiffs.

69.     The contracts and transactions WMF entered into without authorization, in violation of the terms of the Contracts, and in violation of WMF's fiduciary duties to Plaintiffs have caused damages in an amount that will be proven at trial. Upon information and belief, that amount exceeds $200,000.00.

70.     In addition, Plaintiffs have been forced to settle claims with contractors who performed unauthorized work that was unpaid at the time WMF was terminated, including amounts paid to Cristal Flooring and Angel Garcia.

71.     Plaintiffs incurred legal fees in defense of claims brought by contractors for unauthorized work at the Properties, including fees incurred in defense of a claim brought by Angel Garcia for work performed at the Bryan Hill Apartments.

### WMF Misrepresented The Performance Of The Properties

72.     Relying on the conduct set forth above, in order to avoid scrutiny from Plaintiffs, WMF inflated the apparent occupancy rate of the Properties, when in fact the Properties were occupied by substandard tenants not paying security deposits, rent, and utilities.

73.     WMF maintained records representing that vacant apartments within the Properties were "rent ready," when in fact the apartments were in disrepair and unoccupiable.

74.     WMF also concealed the effects of their mismanagement by, for example, allowing utilities to fall into arrears after WMF took over. This had the effect of appearing to increase occupancy rates in the short term, while hiding increasing long-term liabilities in the form of utility expenses.

75.     WMF engaged in substandard accounting procedures, in violation of the Contracts and WMF's fiduciary duties to Plaintiffs, which prevented Plaintiffs from overseeing WMF's management of the Properties.

76.     Upon information and belief, WMF and Wehner failed to implement controls to prevent the foregoing conduct.

77.     Upon information and belief, WMF intended its conduct to inflate the occupancy level of the Properties in order to avoid scrutiny from Plaintiffs and delay Plaintiffs' termination of the Contracts.

78.     In reliance on these false occupancy rates, Plaintiffs continued to employ WMF and refrained from terminating the Contracts.

79.     During this period, WMF continued to profit from its operation of the Properties.

80.     In total, Plaintiffs paid hundreds of thousands of dollars to WMF for its operation of the Properties.

**WMF Withdrew Funds From Plaintiffs' Accounts After Termination Of The Contracts**

81.     After termination of the Contracts, WMF withdrew funds from Plaintiffs' accounts without authorization and outside the ordinary course of business.

82.     Upon information and belief, the purpose of these withdrawals was to pay WMF, its contractors, and affiliates for unauthorized transactions.

**Upon Information And Belief, WMF Sought And Obtained Payment For Personnel In Violation Of The Contracts And In Violation Of WMF's Fiduciary Duties To Plaintiffs**

83.     Under the Contracts, WMF was authorized to retain personnel reasonably necessary in order to properly maintain and operate the Properties.

84.     The payroll for necessary personnel was an expense paid by Plaintiffs.

85.     Upon information and belief, WMF paid employees who did not work at the Properties and, at the very least, were not "necessary" to the operation of the Properties.

86.     The basis for the foregoing belief includes (i) WMF granted rent-free apartments to its employees who worked at different properties, and (ii) upon request, WMF refused to provide payroll records to Plaintiffs, in violation of WMF's contractual obligation to maintain books and records for the Properties and WMF's fiduciary duties to Plaintiffs.

87.     As a result of WMF's actions, upon information and belief, Plaintiffs paid for inflated payroll in an amount that will be determined during discovery.

88.     As a result of the foregoing conduct and deceptive acts, WMF and Wehner delayed Plaintiffs discovery of the resulting damages until recently.

89.     The foregoing conduct constitutes intentionally tortious and/or grossly negligent conduct.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT
### (Plaintiffs against WMF)

90.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

91.     Plaintiffs and WMF entered into Contracts on or about June 1, 2017.

92.     WMF violated the Contracts, entered into unauthorized contracts, and engaged in unauthorized and sham transactions using Plaintiffs' funds, including (i) engaging in transactions with affiliates of WMF or Wehner without disclosing such affiliation, (ii) engaging in transactions with affiliates of WMF or Wehner on terms exceeding market value, (iii) billing Plaintiffs for transactions that did not occur, (iv) directing expenditures at the Properties in the best interest of WMF, not in the best interest of Plaintiffs, and (v) engaging in transactions in excess of the authority set forth in the Contracts.

93.     As a result of this conduct, Plaintiffs suffered damages in excess of hundreds of thousands of dollars, consisting of (i) fees incurred in defense of a claim brought by Angel Garcia relating to the Bryan Hill Apartments, (ii) funds paid to Angel Garcia for work relating to the Bryan Hill Apartments, (iii) an amount that will be proven at trial which was paid to Cristal Flooring, and (iv) an amount that will be proven at trial for other unauthorized transactions, believed to be in excess of $200,000.00.

94.     WMF further violated the Contracts by (i) failing to maintain apartments, resulting in thousands of dollars of damage in foregone rent due to Section 8 abatement, (ii) failing to repair fire-damaged units at Summer Oaks Apartments, resulting in damages of foregone rent during the units vacancy, (iii) breaching WMF's agreement to perform fire remediation work at Summer Oaks Apartments, resulting in damages of over one hundred thousand dollars, (iv) failing to properly oversee construction, resulting in thousands of dollars of damage relating to debris remediation from the roofs of the Summer Oaks Apartments, and (v) thousands of dollars for work paid but never performed.

95.     As a result of the foregoing breach, Plaintiffs suffered damages in an amount to be proven at trial, consisting of unapproved expenses paid by Plaintiffs during WMF's management of the Properties, including, but not limited to, funds paid by Bryan Hill to Angel Garcia.

96.     Upon information and belief, WMF violated the Contracts by (i) offering unapproved lease concessions to prospective tenants, (ii) leasing rent-free apartments to employees, friends, and family of WMF, (iii) leasing to substandard tenants, (iv) allowing tenants to occupy units without collecting rent, and (v) failing to collect security deposits. The amount of such violations will be proven at trial, but is believed to be in excess of $50,000.00.

97.     Upon information and belief, WMF violated Sections 3.01 and 3.06 of the Contracts by charging Plaintiffs for WMF personnel who were not employed exclusively at the Properties and by charging Plaintiffs for WMF personnel who were unnecessary to the successful operation of the Properties. The amount of such transactions will be proven at trial, but are believed to be in excess of $50,000.00.

98.     As a result of the foregoing breaches, Plaintiffs suffered hundreds of thousands of dollars in damages, including (i) repair expenses incurred for such tenants, (ii) foregone security deposits, (iii) utility expenses, (iv) eviction expenses, and (v) unauthorized free rent granted to WMF employees.

99.     WMF violated the Contracts by failing to implement controls and accounting practices in accordance with accepted accounting practices.

100.    Upon information and belief, WMF failed to (i) seek Plaintiffs' approval prior to executing large transactions and paying for good and services, (ii) properly account for transactions, (iii) control and oversee low-level employees' stewardship of Plaintiffs' assets, (iv) audit invoices to confirm work was actually performed at the Properties, and (v) maintain accurate rent records.

101.    As a result of the foregoing, Plaintiffs have been damaged in an amount that will be proven at trial, but is believed to be in excess of $50,000.00.

102.    But for the foregoing breaches, Plaintiffs would not have ratified many of the transactions it did. Plaintiffs intend to establish the value of such transactions in the course of discovery and seek damages for the same.

103.    But for the foregoing breaches, including those which concealed the true performance of the Properties, Plaintiffs would have terminated the Contracts with WMF.

14

Accordingly, Plaintiffs are entitled to the return of hundreds of thousands of dollars in management fees.

104.    In addition to the damages specified above, Plaintiffs lost profits in an amount to be proven at trial, but that is believed to be in excess of $1,000,000.00.

105.    In total, WMF's breach of the Contracts damaged Plaintiffs in excess of $1,000,000.00, plus other damages that will be proven at trial.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT
### (Summer Oaks against WMF & Wehner Construction)

106.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

107.    On or about December 4, 2018, Summer Oaks entered into a contract with WMF and Wehner Construction for certain fire remediation and rebuild services at Building 5736 of the Summer Oaks Apartments (the "Construction Contract"). The scope of work was described in an invoice generated by Israel Banales.

108.    Summer Oaks paid WMF and Wehner Construction over one hundred thousand dollars in exchange for such work.

109.    WMF and Wehner Construction failed to substantially complete the work according to the Construction Contract.

110.    Work that WMF and Wehner Construction attempted to complete was not completed in a workmanlike manner, including, but not limited to, WMF and Wehner Construction's failure to install a sprinkler system in compliance with the building code.

111.    Upon information and belief, the fair market value of services provided by WMF and Wehner Construction did not exceed $5,000.00.

112.    Due to the delay caused by WMF and Wehner Construction, Summer Oaks lost rent revenue for the affected building.

15

113.   As a result of the breach of the Construction Contract, Summer Oaks is entitled to over one hundred thousand dollars in contractual and consequential damages, plus lost revenue.

### THIRD CAUSE OF ACTION – NEGLIGENCE/BREACH OF FIDUCIARY DUTY
#### (Plaintiffs against WMF)

114.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

115.   As an agent of Plaintiffs, WMF owed Plaintiff a fiduciary duty under Texas law.

116.   WMF violated its fiduciary duties by engaging in self-dealing transactions and by failing to preserve and account for WMF's Properties, including (i) leasing units to employees, friends, and family of WMF for little or no rent, (ii) managing the Properties in the best interest of WMF, but not in the best interest of Plaintiffs, including adopting policies that would benefit the short-term occupancy of the Properties, while depressing the long-term success of the Properties, (iii) engaging vendors affiliated with WMF or Wehner without disclosing that relationship to Plaintiffs and without obtaining informed consent from Plaintiffs, (iv) employing unnecessary personnel at the Properties, (v) failing to properly maintain the books and records of the Properties, (vi) relieving tenants of the obligation to pay utilities, (vii) leasing to substandard tenants, (viii) failing to collect security deposits, (ix) granting free utilities to tenants, (x) waiving security deposit requirements, and (xi) executing unauthorized distributions outside the ordinary course of business.

117.   Under Texas law, WMF further breached its fiduciary duties by concealing the actual performance of the Properties from Plaintiffs.

118.   As a result of the foregoing, Plaintiffs ratified a number of transactions they would not have. The amount of these transactions will be proven at trial.

119.   As a result of the foregoing, WMF is entitled to damages as a result of WMF's breach of its fiduciary duties, as more fully alleged above and to the recoupment of management fees and construction fees paid to WMF, in over one hundred thousand dollars.

120.   The contractual damages set forth above also arise from WMF's breach of its fiduciary duties to Plaintiffs. Plaintiffs are therefore entitled to over $1,000,000.00 in damages.

121.   Plaintiffs are further entitled to reimbursement for transactions executed by WMF for the Properties while WMF was in breach of its fiduciary duties. Such amount is believed to be in excess of $1,000,000.00.

122.   In addition to the damages specified above, Plaintiffs lost profits in an amount to be proven at trial, but believed to be in excess of $1,000,000.00.

### FOURTH CAUSE OF ACTION – CONVERSION/MISAPPROPRIATION/THEFT
### (Plaintiffs against WMF & Wehner)

123.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

124.   Plaintiffs entrusted the Properties to WMF and gave WMF authority to execute transactions as its agent, thus creating a fiduciary relationship.

125.   Upon information and belief, WMF and Wehner had no intention of complying with the Contracts or the fiduciary obligations arising from the principal-agent relationship between Plaintiffs and WMF.

126.   WMF wrongfully misappropriated the Properties and Plaintiffs' assets for the benefit of WMF, its affiliates, and Wehner.

127.   Upon information and belief, Wehner had actual or constructive knowledge of the tortious conduct of WMF.

128.   Upon information and belief, Wehner and WMF had actual or constructive knowledge of the tortious conduct of WMF's employees.

129.   The basis for the foregoing beliefs are that WMF has a widespread practice of placing WMF employees on the payroll of individual properties, even though those employees are not assigned to the property and performed no work at the property during the relevant payroll period.

130.   Wehner and WMF failed to implement sufficient controls to deter the tortious conduct of WMF employees.

131.   As a result of the foregoing conduct and deceptive acts, Plaintiffs ratified many transactions they would not have. The amount of these transactions will be proven at trial.

132.   Based on the foregoing, Plaintiffs are entitled to compensatory damages in an amount that will be proven at trial, which is believed to be in excess of $1,000,000.00, consisting of accounting irregularities, self-dealing transactions, inflated payroll, free rent, and utilities granted in excess of WMF's authority, plus other damages that will be proven at trial.

133.   The foregoing damages should be awarded jointly and severally against WMF and Wehner.

### FIFTH CAUSE OF ACTION - FRAUD
### (Plaintiffs against WMF & Wehner)

134.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

135.   Pursuant to the Contracts, WMF agreed to keep full and adequate books of account and such other records reflecting the results of operation of the Property on an accrual basis in accordance with accepted accounting practices.

136.   Upon information and belief, WMF made this representation with no intention of complying with this section.

137.   The basis for this belief includes the following (i) WMF granted rent-free apartments to employees who worked at different properties, (ii) WMF reported units were "rent

18

ready" when they were uninhabitable, (iii) WMF reported units were vacant when they were actually occupied, (iv) WMF repeatedly executed transactions without authorization, exceeding the allowable threshold under the Contracts, and (v) WMF failed to implement controls to prevent the foregoing conduct.

138.    In short, WMF implemented no controls to ensure the protection of Plaintiffs' assets (including the Properties) or to account for the operations of the Properties.

139.    WMF also represented it would enter into contracts and transactions with third parties in the best interest of Plaintiffs at or below market terms.

140.    Upon information and belief, WMF made this material representation with no intention of complying with this provision and instead intended to steer expenditures to affiliated entities.

141.    WMF agreed to only rent apartments to tenants on terms and conditions approved by Owner.

142.    WMF offered unauthorized concessions to high-risk tenants, including waiving security deposits and granting free utilities to tenants who were unlikely to remain tenants at the Properties and who created nuisances for existing tenants.

143.    WMF offered these concessions without Plaintiffs' authorization or knowledge.

144.    Upon information and belief, WMF used this scheme to inflate occupancy, in order to maintain the Contracts and to generate fees for WMF and revenues for WMF's affiliates.

145.    Upon information and belief, WMF ordered renovations for the Properties where those renovations were not necessary or justified by the rent that would be generated by the renovated unit.

146.    Upon information and belief, WMF engaged in this conduct in order to generate revenue for WMF's affiliates.

147.    Upon information and belief, WMF engaged in this conduct without a legitimate business purpose.

148.    WMF misrepresented the actual occupancy of the Properties to Plaintiffs.

149.    WMF misrepresented the actual income of the Properties to Plaintiffs.

150.    Wehner represented to Plaintiffs that WMF would increase occupancy of the Properties from 71% to 81%.

151.    As a result of the foregoing conduct and deceptive acts, WMF and Wehner delayed Plaintiffs discovery of the resulting damages until recently.

152.    As a result of the foregoing conduct and deceptive acts, Plaintiffs relied on the misrepresentations and failed to object to many transactions they otherwise would have if they had not been deceived by WMF. The amount of these transactions will be proven at trial.

153.    Upon information and belief, Wehner was directly involved in the foregoing conduct and had actual or constructive knowledge of the foregoing conduct.

154.    Upon information and belief, the foregoing conduct was intended to and did in fact benefit Wehner in his individual capacity, through other entities that he owned or in which he had a beneficial interest, including Wehner Construction and BSI.

155.    Based on the foregoing, Plaintiffs are entitled to compensatory damages, consisting of management fees, accounting irregularities, self-dealing transactions, inflated payroll, free rent, utilities granted in excess of WMF's authority, costs associated with substandard tenants at the Properties, and other damages that will be proven at trial.

156. In addition to the damages specified above, Plaintiffs lost profits in an amount to be proven at trial, but that is believed to be in excess of $1,000,000.00 dollars.

157. The foregoing damages should be awarded jointly and severally against WMF and Wehner.

### SIXTH CAUSE OF ACTION – FRAUD BY NONDISCLOSURE
#### (Plaintiffs against WMF)

158. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

159. As an agent of Plaintiffs, WMF had a fiduciary duty to disclose the actual occupancy of the Properties to Plaintiffs.

160. As an agent of Plaintiffs, WMF also had a fiduciary duty to disclose the actual income of the Properties to Plaintiffs.

161. The actual occupancy and actual income of the Properties are material facts.

162. Upon information and belief, WMF failed to disclose the actual occupancy and actual income of the Properties with the intent of prolonging their relationship with Plaintiffs and thereby inflating WMF's management fee income.

163. WMF knew Plaintiffs were both ignorant of and did not have an equal opportunity to discover the material facts.

164. Plaintiffs justifiably relied on the information and continued to employ and pay management fees to WMF.

165. Upon information and belief, Wehner was actively involved in the failure to disclose or had actual or constructive knowledge of such concealment.

166. As a result of WMF's failure to disclose the material facts, Plaintiffs have been damaged in the amount of the management fees paid to WMF.

167.    In addition to the damages specified above, Plaintiffs lost profits in an amount to be proven at trial, but that is believed to be in excess of $1,000,000.00 dollars.

## SEVENTH CAUSE OF ACTION - UNJUST ENRICHMENT/QUANTUM MERUIT
### (Plaintiffs against WFM & Wehner)

168.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

169.    Upon information and belief, WMF engaged in self-dealing transactions with its employees and affiliates, including Wehner Construction and BSI.

170.    WMF realized illegitimate income from these transactions.

171.    It is against equity and good conscience to allow WMF to retain these amounts.

172.    This Court should therefore award damages to Plaintiffs in an amount to be proven at trial, which is not less than $1,000,000.00, such amount consisting of all contract damages plead above, lost profits, plus other damages to be proven at trial.

## EIGHTH CAUSE OF ACTION – UNJUST ENRICHMENT/QUANTUM MERUIT
### (Summer Oaks against WMF & Wehner Construction)

173.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

174.    Summer Oaks paid over one hundred thousand dollars to WMF and Wehner Construction for the Construction Contract.

175.    WMF and Wehner Construction performed no more than $5,000.00 worth of work described in the Construction Contract.

176.    It is against equity and good conscience to allow WMF and Wehner Construction to retain these amounts.

177.    This Court should enter judgment against WMF and Wehner Construction, jointly and severally, in an amount to be proven at trial, which is not less than $100,000.00.

## NINTH CAUSE OF ACTION - ACCOUNTING
**(Plaintiffs against WMF)**

178.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

179.    As set forth above, Plaintiffs and WMF had a fiduciary relationship.

180.    In reliance on this fiduciary relationship, Plaintiffs placed the Properties under WMF's control.

181.    WMF has not furnished an adequate accounting for the Properties.

182.    Plaintiffs have no adequate remedy at law.

183.    This Court should therefore order an accounting of the assets and accounts of the Properties during the period WMF managed the Properties.

## TENTH CAUSE OF ACTION – PUNITIVE DAMAGES
**(Plaintiffs against WMF, Wehner Construction, & Wehner)**

184.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

185.    The conduct of Defendants set forth above was willful, wanton, reckless, intentional, and with malice.

186.    Defendants had actual or constructive knowledge of the fraudulent schemes set forth above.

187.    As a result of Defendants' conduct, punitive damages should be imposed on Defendants because of their willful, wanton, reckless, intentional, and malicious acts.

## JURY DEMAND

188.    Plaintiffs demand a trial by jury of all issues so triable.

## PRAYER

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment as follows:

A.    Declaring WMF breached the Contracts;

B.      Awarding compensatory damages in an amount to be proven at trial, but not less than $1,000,000.00;

C.      Awarding damages for lost profits in an amount to be proven at trial, but which is not less than $1,000,000.00;

D.      Awarding punitive damages in an amount to be proven at trial;

E.      Granting an accounting to Plaintiffs concerning WMF's management of the Properties;

F.      Awarding attorneys' fees and costs for this action as recoverable by law, together with any other and further relief as the Court may deem just and proper.

Respectfully submitted,

Seth A. Day, OBA #20670
Ty E. Schoenhals, OBA #33607
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Telephone (405) 553-2828
Facsimile (405) 553-2855
sday@hallestill.com
tschoenhals@hallestill.com
**ATTORNEYS FOR PLAINTIFFS**

2348362.2:008299.00002

24